**UNITED STATES DISTRICT COURT**

DISTRICT OF MAINE

KENNETH PETTINGILL,

Plaintiff,

v.

THE COMMISSIONER OF THE MAINE DEPARTMENT OF HEALTH AND HUMAN

SERVICES, in his or her official capacity,

THE CHAIR OF THE MAINE BOARD OF LICENSURE IN MEDICINE, in his or her official

capacity,

THE CHAIR OF THE MAINE BOARD OF OSTEOPATHIC LICENSURE, in his or her

official capacity,

THE CHAIR OF THE MAINE BOARD OF PHARMACY, in his or her official capacity,

Defendants.

Civil Action No. _____

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**PROLOGUE**

Plaintiff does not ask this Court to order any specific medication, dosage, or clinical decision. This action challenges the operation of state implemented surveillance systems and related enforcement structures that impose coercive conditions and deny meaningful access to covered health programs and services in violation of federal law.

This case concerns the transformation of individualized medical care into a surveillance driven access environment in which treatment decisions are shaped by regulatory visibility, algorithmic scoring, and compliance based risk management rather than individualized medical judgment.

Plaintiff is a person with a disabling medical condition involving severe chronic pain and autonomic dysregulation. His condition requires individualized assessment and flexible clinical decision making. The system at issue constrains that process.

The challenged structures do not operate through a single directive denying care. Instead, they function through interlocking regulatory mechanisms that influence provider behavior and limit the range of clinically available treatment options.

The effect is a system in which meaningful access to care is constrained for individuals whose conditions require individualized evaluation, in violation of federal disability law and constitutional protections.

**PRECURSOR**

This case arises from the transformation of pain care from an individualized clinical process into a surveillance conditioned access environment. Over the past decade, federal and state policy responses to prescription drug misuse have been implemented through monitoring systems, enforcement structures, risk stratification tools, professional guidance, and administrative oversight mechanisms that operate together to influence medical decision making. Although these measures are often described as neutral public health safeguards, their practical effect has been to constrain individualized treatment for patients with severe chronic pain and complex disabling conditions.

In Maine, that environment includes the State's Controlled Substance Stewardship framework, the Prescription Monitoring Program, associated compliance expectations, and the disciplinary authority of professional licensing boards. These structures do not operate only as background data collection tools. They function as ongoing sources of scrutiny, comparison, and perceived professional risk. In practice, they shape provider behavior by encouraging avoidance of treatment decisions that may draw attention, trigger review, or create administrative exposure.

The resulting system does not usually deny care through a single formal prohibition. Instead, it exerts pressure indirectly, through layered oversight, data visibility, algorithmic scoring,

prescribing expectations, and institutional caution. The effect is diffuse but powerful. Clinical judgment is not eliminated in theory, but it is narrowed in practice by a regulatory environment that makes deviation from risk averse norms professionally hazardous. For disabled patients who require individualized pain treatment, this environment can operate as a barrier to meaningful access to care.

Plaintiff's claim is not that every monitoring tool is unlawful in all applications, nor that the State may never regulate controlled substances. Plaintiff challenges the operation of these systems when they function together to deny meaningful access to covered health services and to burden disabled persons through inflexible, surveillance driven constraints that are untethered from individualized need. Federal disability law does not permit a covered public program to maintain facially neutral structures that predictably distort access for persons whose conditions require individualized assessment.

The problem is not merely historical. Policymakers have long been on notice that broad opioid control measures can produce serious harms for pain patients when implemented without adequate safeguards for individualized care. That notice includes federal criticism of forced or non individualized tapering, published concerns from clinicians and researchers, patient reports of unmanaged pain and functional decline, and growing recognition that population level prescribing restrictions can be misapplied to patients with complex medical conditions. Yet the governing structure continued to rely on risk signaling, surveillance visibility, and compliance

pressure without building in meaningful protections for disabled patients whose access to treatment depends on individualized judgment.

That notice was reinforced by subsequent legislative and policy developments. Measures such as Minnesota HF3786 reflect an emerging recognition that patients with intractable or chronic pain can be harmed when regulatory systems displace individualized medical judgment and convert pain treatment into a uniform risk management exercise. Whether or not every such enactment governs Defendants directly, these developments provided further notice that surveillance centered prescribing regimes can impose predictable access barriers on disabled pain patients and require correction, accommodation, and protective safeguards.

This case therefore concerns more than disagreement over treatment philosophy. It concerns the administration of state linked systems that foreseeably shape healthcare access for disabled persons through surveillance based pressure rather than individualized assessment. Plaintiff alleges that Defendants have maintained and continue to administer these structures in a manner that denies meaningful access to covered health services, burdens the exercise of medical judgment necessary for disability related care, and subjects Plaintiff to ongoing harm in violation of Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Fourteenth Amendment.

This action seeks prospective declaratory and injunctive relief only. Plaintiff does not ask the Court to practice medicine, to order any particular drug, or to mandate any specific dose. Plaintiff asks the Court to halt the ongoing operation of public enforcement and surveillance structures insofar as they deny federally protected meaningful access and perpetuate continuing violations of federal law.

**STATEMENT OF FACTS**

1. Plaintiff suffers from severe chronic pain accompanied by autonomic dysregulation. His condition substantially limits major life activities including sitting, standing, bending, gastrointestinal function, and mobility. Plaintiff cannot sit and frequently must lie flat due to severe abdominal and neuropathic pain associated with autonomic dysfunction.

2. Plaintiff experiences autonomic dysregulation that correlates with the severity of his uncontrolled pain. When pain intensifies, associated symptoms including gastrointestinal dysfunction, positional intolerance, and systemic instability worsen, consistent with sustained autonomic activation.

3. Medical records reflect that Plaintiff often remains standing or lies supine during medical appointments because sitting is not tolerated. At times he has been unable to perform pulmonary testing due to abdominal pain severity. Records from Carolina Pain Institute document prolonged supine positioning and near incapacitation. Medication lists reflect modest opioid dosing and escalating adjunctive therapy in the absence of adequate pain control. Medication lists may contain duplicative entries due to electronic record rollover.

4. Despite documented functional limitation, Plaintiff's care has occurred within a surveillance driven environment in which Prescription Monitoring Program data, NarxCare algorithmic scores, and compliance expectations shape provider decision making.

5. NarxCare scores are proprietary, nondiagnostic algorithmic outputs generated from prescription history data. They are not clinical determinations. They are not disability assessments. They are not individualized medical evaluations. Yet they function as gatekeeping instruments that influence prescribing scrutiny and provider behavior.

6. The involvement of multiple specialists required for complex diagnosis increases prescription entries and system overlap within monitoring databases, which can elevate algorithmic risk scoring independent of clinical misconduct.

7. Plaintiff has experienced structural barriers including proposed mandatory drug testing as a condition of medication adjustment, heightened scrutiny tied to Prescription Monitoring Program review, and constrained therapeutic flexibility attributable to risk management policies rather than individualized medical assessment.

8. Plaintiff has not been forcibly tapered. His injury arises from systematic undertreatment and structural deterrence of adequate analgesia within a compliance based surveillance regime.

9. The shift from individualized medicine to categorical risk control has foreseeably burdened Plaintiff's access to medically necessary care.

10. Plaintiff's experience illustrates that severe uncontrolled pain is not a benign condition. When regulatory and surveillance structures constrain individualized medical judgment, the resulting harm to disabled patients can be profound and ongoing.

11. As a direct result of Defendants' regulatory enforcement structure and prescription surveillance systems, Plaintiff's treating providers have expressed reluctance to adjust or escalate analgesic therapy due to the professional risks associated with Prescription Monitoring Program scrutiny and NarxCare algorithmic scoring. This regulatory environment materially constrained the medical options available to Plaintiff and resulted in ongoing uncontrolled pain.

**SURVEILLANCE DRIVEN ACCESS ENVIRONMENT**

12. The State's controlled substance oversight structure operates through continuous data extraction, prescriber profiling, algorithmic scoring, and regulatory signaling that collectively influence provider behavior.

13. This system does not merely collect information. It shapes treatment availability. It conditions clinical discretion. It embeds enforcement logic into routine care.

14. For individuals with complex pain related disabilities, meaningful access to covered health services is constrained not by individualized medical contraindication, but by structural risk architecture.

**COUNT I**

15. Plaintiff is a qualified individual with a disability within the meaning of Title II of the Americans with Disabilities Act.

16. Defendants are public officials acting in their official capacities who are responsible for administering and enforcing regulatory structures governing access to covered health programs and services.

17. Defendants operate health program structures and regulatory systems that deny Plaintiff meaningful access to covered services by imposing surveillance mechanisms and compliance conditions that disproportionately burden persons whose disabilities require individualized analgesic assessment.

18. Through the operation of Prescription Monitoring Program surveillance, algorithmic risk scoring instruments, and compliance based regulatory oversight, Defendants maintain policies, practices, or procedures that materially constrain individualized medical decision making for persons with complex pain related disability.

19. Defendants have failed to make reasonable modifications to policies, practices, and procedures necessary to avoid discrimination based on disability.

20. The denial of meaningful access is structural and ongoing.

**COUNT II**

21. Defendants receive federal financial assistance within the meaning of Section 504 of the Rehabilitation Act.

22. Plaintiff is an otherwise qualified individual with a disability.

23. Plaintiff has been denied meaningful access to covered health programs and services by reason of disability through structural policies embedded within controlled substance surveillance frameworks.

24. Defendants maintain and enforce compliance structures that foreseeably burden individuals whose disabilities require individualized medical assessment rather than categorical risk classification.

25. Defendants act with deliberate indifference to the foreseeable risk that categorical risk enforcement burdens persons with complex pain related disability.

**COUNT III**

26. Defendants act under color of state law.

27. Defendants have implemented and maintained enforcement structures that condition access to medical treatment on opaque algorithmic scoring and compliance based surveillance mechanisms.

28. Individuals subject to these structures receive no meaningful notice, explanation, or opportunity to challenge data driven classifications that materially influence access to care.

29. The use of nontransparent algorithmic risk tools as practical gatekeepers to medical treatment implicates procedural due process protections.

30. The cumulative regulatory structure infringes liberty interests in bodily integrity and medical decision making without constitutionally sufficient procedural safeguards.

**INJURY**

31. Plaintiff experiences ongoing severe pain, autonomic instability, reduced mobility, emotional distress, and constrained access to individualized medical care.

32. The injury is structural and continuing.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that the Defendants' administration and enforcement of surveillance based regulatory structures, including Prescription Monitoring Program systems, algorithmic risk scoring mechanisms, and associated compliance frameworks, violate Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Fourteenth Amendment to the United States Constitution.

B. Enjoin Defendants from continuing to administer and enforce such structures in a manner that denies meaningful access to covered health services for individuals with disabilities.

C. Order Defendants to implement reasonable modifications to policies, practices, and procedures to ensure that individuals with disabilities receive meaningful access to individualized medical assessment and care.

D. Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**DATED:**

03/18/2026

_____

**Respectfully submitted,**

Kenneth Pettingill

Plaintiff, Pro Se

9 Millett Drive, Apartment 104

Gorham, Maine 04038

(916) 936-8727

kdpetti@gmail.com